IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BILL BEIGL,

                    Plaintiff,

      v.                                                    OPINION AND ORDER

TRANSAMERICA LIFE INSURANCE                      09-cv-669-slc
COMPANY f.k.a. LIFE INVESTORS
INSURANCE COMPANY OF AMERICA,

                    Defendant.

---

In this diversity action, plaintiff Bill Beigl has sued defendant Transamerica Life Insurance Company for breach of contract and bad faith for its refusal to pay accidental death and hospitalization benefits under the terms of a policy issued to plaintiff's wife, Mavis Beigl, who died eight days after falling from her wheelchair and breaking her hip. Jurisdiction is present under 28 U.S.C. § 1332. Before the court are the parties' cross-motions for summary judgment. As explained below, I am denying plaintiff's motion because it misconstrues the applicable causation standard. I am granting defendant's motion for summary judgment because plaintiff has failed to adduce medical evidence showing that his wife's fall was the "sole cause"–as that term is defined under Wisconsin law–of her hip fracture and resulting death.

The material facts are not in dispute:

FACTS

Plaintiff Bill Beigl is a resident and citizen of Blair, Wisconsin. Defendant Transamerica Life Insurance Company is an insurance company organized under the laws of the State of Iowa, with its principal place of business in Cedar Rapids, Iowa.

In 1983, defendant issued an insurance policy to plaintiff's wife, Mavis Beigl.  The policy's Benefit Rider provides in relevant part as follows:

**Accidental Death Benefit**

> If Accidental Bodily Injury results in the loss of life of the Insured, the Company will pay $100,000 to the estate of the Insured . . .

**Hospitalization Benefit - Injury only**

> If Accidental Bodily Injury results in the Hospital confinement of the Insured, the Company will pay $100 for each day of Hospital confinement . . .

The policy defines the term "injury" to mean "accidental bodily injury sustained, directly and independently of all other causes."  The policy does not define the term "accidental."

Mavis Beigl suffered from post-polio syndrome, scoliosis, severe osteoporosis, obesity and respiratory distress.  She was paralyzed from the waist down as a result of having polio when she was a young child.  Beginning in 2003, she used oxygen delivered via a nasal cannula at night and during exertion to help her breathe.

On January 21, 2008, as Mrs. Beigl was transferring herself from her wheelchair to her bed, she fell to the floor, a distance of 22 inches.  Although Mrs. Beigl was in pain after the fall, she decided simply to lie in bed and get some rest.  A few days later, plaintiff took her to the local hospital in Whitehall, Wisconsin, where she was diagnosed with a left hip fracture.  After determining that she was not a surgical candidate because of her severe osteoporosis, medical staff decided to give her morphine for pain management.  After receiving morphine, however, Mrs. Beigl suffered respiratory failure, which staff concluded likely was secondary to the morphine.  Mrs. Beigl was given medication to counteract the effects of the morphine and put on a ventilation mask; her condition improved and she became awake and alert.  Mrs. Beigl was

2

transferred to Gundersen Lutheran Hospital.  When she arrived, she was competent and able to discuss her condition with her care providers, including her directions on whether staff should take extraordinary measures in the event she would require resuscitation.

Mrs. Beigl remained in the hospital for the next eight days.  Medical staff attempted to ameliorate the pain from her broken hip by providing medication intravenously and by applying a medication patch to the injury site.  In addition, Mrs. Beigl regularly used a Bi-PAP (bi-level positive airway pressure device) machine to help her breathe.  However, the breathing mask was very uncomfortable to wear and muffled her voice, making it difficult to talk.  After several days, and after discussing with her doctors the consequences of removing the Bi-PAP machine, Mrs. Beigl was removed from the machine.  On February 1, 2008, Mrs. Beigl was given morphine and passed away that same night.  Mrs. Beigl was 62 years old at the time of her death.

Trempealeau County  Coroner Bonnie Kindschy authorized an autopsy, which was performed by Dr. Lindsey Thomas.  Summarizing her findings in a report, Dr. Thomas wrote: "Ms. Beigl died as the result of complications of her multiple medical problems resulting from having had polio."  The coroner certified Mrs. Beigl's manner of death as "natural" and listed four causes of death:  1) complications of polio; 2) hemiplegia and post-polio syndrome; 3) severe scoliosis; and 4) respiratory insufficiency.

Plaintiff filed a claim with defendant on Mrs. Beigl's accidental injury policy.  Defendant denied the request, asserting that Mrs. Beigl's death had not been accidental but rather had been caused by her underlying medical conditions.

## EXPERT OPINIONS

### I.  Dr. Kelly Lear-Kaul

After the death certificate was issued, plaintiff solicited opinions from Dr. Kelly Lear-Kaul and Dr. Jeffrey Jentzen as to whether Mrs. Beigl's manner of death should have been certified as "accidental." In a report dated December 10, 2008, Dr. Lear-Kaul opined that Mrs. Beigl's death should have been certified as accidental. She wrote:

> I would sign Mrs. Beigl's death certificate with the **immediate** cause (defined as the condition which primarily caused the death) as 'Complications of left hip fracture' (which would include her hypercapnic respiratory failure that she developed as a direct result of treatment for her fracture) with an interval of onset and death as 8 days, due to or as a consequence of 'Severe osteoporosis and scoliosis' (interval of years) due to 'paralysis and post-polio syndrome.' (interval years).

Dr. Lear-Kaul explained that the question she asks when determining whether a death is accidental is: "But for the injury, would the person have died at this time?" At her deposition, she testified that a death would be certified as accidental "if there is an external force that contributes to the death," whether directly or indirectly. Dr. Lear-Kaul testified that she would certify a death as accidental even if the injury that led to the death would not have been an injury likely to occur in a person without the decedent's underlying disease conditions.

Dr. Lear-Kaul acknowledged that Mavis Beigl's underlying disease conditions caused her to be physically and medically fragile and contributed to her injury and death. At her deposition, Lear-Kaul expressed these opinions: Mrs. Beigl's hip fracture was considered a "low-force" fracture because it was caused by a fall from a short distance; a person without osteoporosis has a less than 50% chance of suffering a low-force fracture from such a short-distance fall; and it was more likely than not that Mrs. Beigl broke her hip in the fall because of her severe osteoporosis. Had Mrs. Beigl not been suffering from various underlying disease

4

conditions, said Lear-Kaul, there was less than a 50% chance that she would have fractured her hip when she fell.  Dr. Lear-Kaul understood the distance of the fall to be 18 inches.

## II.  Dr. Jeffrey Jentzen

Dr. Jentzen issued a report on April 23, 2009.  Like Dr. Lear-Kaul, Dr. Jentzen states that he would have certified Mrs. Beigl's death as "accidental," caused by respiratory complications due to an acute hip fracture.  At his deposition, Jentzen acknowledged that a person with osteoporosis was more susceptible to breaking bones than a person without the condition, and that a person without Mrs. Beigl's underlying medical conditions would not be likely to suffer considerable injury from a fall of 18 inches.

## III.  Dr. Paul Connors

Defendant named Dr. Paul Connors as an expert in this case.  Dr. Connors opines that Mrs. Beigl's death was not the result of an accidental injury.  Dr. Connor opines that a fall from a wheelchair while transferring to a bed would not be likely to cause considerable injury in a person without significant pre-existing conditions like those suffered by Mrs Beigl.

OPINION

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to

permit a jury to return a verdict for that party.'" *Sides v. City of Champaign*, 496 F.3d 820, 826

(7ᵗʰ Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7ᵗʰ Cir.

2005)).  In determining whether a genuine issue of material facts exists, the court must construe

all facts in favor of the nonmoving party.  *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780

(7ᵗʰ Cir. 2007).  Even so, the nonmoving party must "do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).

## I.  Defendant's Summary Judgment Motion

Defendant contends that it is entitled to judgment as a matter of law because plaintiff

has failed to adduce evidence showing that Mrs. Beigl's fall was the sole cause of her death, as

he must do in order to be entitled to payment under the insurance policy.  The parties agree that

the Wisconsin Supreme Court's decision in *Stoffel v. American Family Life Ins. Co.*, 41 Wis. 2d

565, 164 N.W. 2d 484 (1969), provides the controlling legal standard.[1]  In *Stoffel*, the insured

was a 21-year old with no known health problems who died while attempting to lift a wagon off

a tractor wheel.  The insurance policy contained an accidental death benefit provision that payed

double indemnity upon the death of the insured "as the direct result of bodily injury and

independent of all other causes, effected solely through external, violent and accidental

---

[1]Although the policy does not use the term "sole cause," neither party disputes the control of the
construction given by the Wisconsin Supreme Court in *Stoffel* and other cases to similar accidental injury
provisions.  *See McFarlane v. Life Ins. Co. of North America*, 999 F.2d 266, 268 (7ᵗʰ Cir. 1993) ("Neither
McFarlane's policy nor the amendatory rider to it is at issue.  Ostensibly designed to limit the insurer's
exposure, the language of such amendatory riders has been construed by Wisconsin courts as requiring that
the accident be the sole cause of death.") (citing *Stoffel*, 164 N.W.2d at 491; *Graves v. Travelers Ins. Co.*, 66
Wis.2d 124, 224 N.W.2d 398, 404 (1974)).

means . . .".  *Id.*, 42 Wis. 2d at 568, 164 N.W. 2d at 486.  An autopsy determined that the cause of death was a massive hemorrhage resulting from a rupture of the aorta, caused by trauma which in turn was caused by the strain of lifting something heavy.  During the autopsy, however, the physician discovered evidence of a defect in the middle layer of the decedent's aorta, causing a lack of strength in that area.  As a result, the insurance company denied the beneficiary's claim, contending that the lifting was not the sole cause of death and therefore was not covered by the policy.  At trial, the jury found for the beneficiary.

On appeal, the supreme court rejected as too narrow the insurance company's argument that for a death to be an "accident," both the event (in that case, the lifting of the wagon) and result (death) had to be unexpected or unanticipated.  *Id.*, 42 Wis. 2d at 570-71, 164 N.W. 2d at 487-88.  Instead, it applied the "average man test" for defining the word "accident," holding that "if the insured's death was solely caused by the lifting of the heavy wagon off the tractor wheel, the cause of death was accidental within the meaning of the policy, it being the direct and unexpected result of the act of the incident involved."  *Id.* at 571, 164 N.W. 2d at 488.

Turning to the issue of causation, the court found that the trial court had properly instructed the jury on the meaning of "sole cause."  The instructions read:

> You are instructed that a man insured may be suffering from some disease or physical condition that has weakened his resistance, yet he may be the victim of an accident which is the sole cause of his disability, although disability might have been less likely had he been in better physical condition.

> This question calls for a finding of fact as to whether the disability incurred by the insured, Richard J. Stoffel, in the accident, the alleged accident, of December 4th, 1965, resulted solely from the alleged accident, independent of all other causes. In this connection you are instructed that if a disease or bodily condition exists and an accident occurs, to constitute the accidental means

the sole cause of the injury, under policies like the one here in suit, it is not necessary that the injuries or the results thereof would have been as severe as they were had the disease or bodily condition not existed; but it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed. But if no considerable injury at all would have resulted had the insured, Richard J. Stoffel, not been afflicted with the existing disease or condition, the accidental means cannot be considered as the sole cause of the injury.

*Id*. at 572, 164 N.W. 2d at 488. The court went on to find that there was credible evidence to support the jury's verdict, noting that the pathologist who had performed the autopsy had offered his opinion, based on a reasonable medical probability, that the aorta would not have ruptured without the lifting and that the lifting itself had probably caused considerable damage to the aorta. *Id*. at 575.

In the instant case, the parties agree that Mrs. Beigl's fall and subsequent death constitute an accident, but they disagree about what plaintiff must show under *Stoffel* in order to prove that Mrs. Beigl's fall was the "sole cause" of her fatal injury. Seizing on the "less likely" language in the first sentence of the jury instruction endorsed in *Stoffel*, plaintiff argues that he is required to show only that a fall from a wheelchair *could* have caused considerable injury even to a healthy person. Defendant, on the other hand, argues that plaintiff must show that it was *more likely than not* that considerable injury would have resulted to a healthy person who fell from the wheelchair. This difference matters, argues defendant, because neither of plaintiff's experts offered such testimony. In fact, defendant points out, Drs. Lear-Kaul and Jentzen testified that had Mrs. Beigl not been suffering from various underlying disease conditions, it was *not* likely that she would have suffered a hip fracture when she fell. And without expert testimony, says defendant, plaintiff cannot establish his claim.

8

Defendant's position regarding plaintiff's burden is backed solidly by *McFarlane v. Life Ins. Co. of North America*, 999 F.2d 266 (7th Cir. 1993). The plaintiff in *McFarlane* made the very same argument that plaintiff is making here: that under *Stoffel*, a plaintiff need only show that the activity "could have" caused considerable injury to a healthy individual. *Id*. at 268. Rejecting this argument, the court of appeals explained:

> Mrs. McFarlane contends that the magistrate judge erred by holding her to a higher burden inasmuch as the judge concluded Mrs. McFarlane did not prove by a preponderance of the evidence that McFarlane would have sustained an injury that night had he not suffered from a preexisting heart condition. The distinction lies in the difference between "could" and "would." Whereas "could" refers to some probability of an indeterminate size, "would" conveys something closely akin to more likely than not. In other words, the magistrate judge concluded, based on all the evidence presented, that Mrs. McFarlane did not establish that it was more likely than not that McFarlane would have sustained some serious injury absent his heart condition. This reasoning is consistent with Wisconsin law.

> *Id*. at 269.

Plaintiff urges this court to ignore *McFarlane* on the ground that it was wrongly decided. However, plaintiff does not cite– and I have not found–any federal or Wisconsin case criticizing or overruling *McFarlane*. Accordingly, the case is good law in this circuit, and therefore, binding upon this court.

In any event, I agree with the *McFarlane* court's interpretation of *Stoffel*. Although the "less likely" language from the instruction approved in *Stoffel* arguably provides some support for plaintiff's position, the final sentence of the instruction points the other way. Also, in upholding the jury verdict in *Stoffel*, the Wisconsin Supreme Court relied on the testimony of the attending physician, who testified that the lifting of the wagon "probably" caused considerable damage to

9

the decedent's aorta.  (That is, the jury heard expert testimony that the decedent probably would have perished even if his aorta had been strong).

In sum, pursuant to *Stoffel*, plaintiff is not entitled to the insurance proceeds unless he can show that it was more likely than not that Mrs. Beigl would have sustained some serious injury absent her preexisting conditions.

Plaintiff insists that this case must be heard by a jury because the hypothetical questions posed to Drs. Lear-Kaul and Jentzen assumed that the height of Mrs. Beigl's wheelchair was 18 inches, when the height actually was 22 inches.  However, plaintiff has presented no evidence that this four-inch difference is material.  Although he stated in his brief that he was submitting an affidavit from Dr. Jentzen stating that a 62-year old woman falling 22 inches at the same angle that Mavis Beigl fell would be likely to break her hip, he has not actually submitted the affidavit.  As the Seventh Circuit has said, summary judgment proceedings provide the "put up or shut up" moment in a lawsuit, and offering to provide relevant evidence is not the same as providing it.  *Everroad v. Scott Truck Systems, Inc*, 604 F.3d 471, 476 (7th Cir. 2010).  Absent a timely affidavit from at least one of his experts stating that a fall of 22 inches would more likely than not cause considerable injury to a healthy person,[2] plaintiff has no medical expert testimony to meet his burden of proof on causation.[3]  There is no genuine dispute that such medical testimony is essential.  *See Stoffel*, 41 Wis. 2d at 573, 164 N.W. 2d at 489 ("There

---

[2] And, pursuant to F.R. Civ. P. 26(e)(2) and this court's preliminary pretrial conference order, dkt. 6 at 2, it would be much too late for a physician to offer such a game-changing opinion at this juncture.

[3] Plaintiff also makes the conclusory argument that neither expert was asked to assume a hypothetical person of Mrs. Beigl's age and weight.  He has not explained, however, why Mrs. Beigl's obesity would not be considered a pre-existing bodily condition, or adduced any medical evidence that a healthy 62-year old likely would have broken her hip in a similar fall.

remains the question of whether there was credible medical testimony in the record to sustain the verdict"). Perforce, defendant's summary judgment motion must be granted.

Not so fast, urges plaintiff: he argues that a brochure provided to Mavis Beigl and representations made to plaintiff by a representative of the insurance company at the time Mrs. Beigl purchased the policy created a reasonable expectation on Mrs. Beigl's part that an accident resulting in a broken hip would be covered by the policy, and that a jury must decide what the parties intended. Under ordinary rules of contract construction, however, the court resorts to extrinsic evidence to determine the parties' intent only if the policy language is ambiguous. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009). Plaintiff makes no attempt at the necessary threshold showing that the contract language is ambiguous. Accordingly, this court has no basis to consider his extrinsic evidence. *APS Sports Collectibles, Inc. v. Sports Time*, Inc., 299 F.3d 624, 631 (7th Cir. 2002) (it is not court's responsibility to research and construct parties' arguments, and "conclusory analysis will be construed as waiver.").

In sum, defendant is entitled to summary judgment because plaintiff has failed to adduce evidence from which a reasonable finder of fact could conclude that Mrs. Beigl's accidental fall was the "sole cause" of her injury and subsequent death. It follows then, that defendant also is entitled to summary judgment on plaintiff's claim of bad faith.

## II. Plaintiff's Motion for Summary Judgment

Although I have found that defendant is entitled to summary judgment, for the sake of completeness I briefly address plaintiff's motion for summary judgment, which is framed somewhat differently than his response to defendant's motion. Plaintiff appears to be arguing

11

that he is entitled to summary judgment because the report of defendant's expert, Dr. Paul Connors, "is not admissible since it is based on the wrong legal standard." Dkt. 35, at 3.

Plaintiff is mistaken. Dr. Connors specifically considered whether a fall from a wheelchair was likely to cause considerable injury to a person not suffering from plaintiff's preexisting conditions and concluded that it would not. Plaintiff also asserts that "[i]t is incredible for Doctor Paul Connors to state that a broken hip is not a considerable injury," *id*., but Dr. Connors never made such a statement.

Further, defendant need not present expert evidence unless plaintiff first comes forth with his own admissible expert testimony to meet his burden of proof. As discussed above, plaintiff has not produced such evidence. In his brief in support of his motion for summary judgment, plaintiff cites the reports from Drs. Lear-Kaul and Jentzen in which they state that they would have certified Mavis Beigl's cause of death as "accidental" due to complications of a hip fracture. However, neither of plaintiff's experts reviewed the policy language or considered in his or her report whether the fall was the "sole cause" of death as defined in *Stoffel*. As the discussion in the preceding section makes clear, these opinions that Mavis Beigl would not have died when she did but for her fall and resulting fracture are not the relevant question in this case.

ORDER

IT IS ORDERED THAT:

1. The motion of plaintiff Bill Beigl for summary judgment (dkt. 34) is DENIED.

2.   The motion of defendant Transamerica Life Insurance Company for summary judgment (dkt. 47) is GRANTED.

3.   The motion to bifurcate the breach of contract and bad faith claims (dkt. 15) is DENIED as moot.

4.   The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 6th day of September, 2010.

                         BY THE COURT:

                         /s/

                         STEPHEN L. CROCKER
                         Magistrate Judge

13